WILLIAMS LAW FIRM, P.C.
Mark S. Williams, Esq.
Nicholas J. Pagnotta, Esq.
235 E. Pine, P.O. Box 9440
Missoula, Montana 59807-9440
(406) 721-4350 Fax: (406) 721-6037
mark@wmslaw.com
nick@wmslaw.com
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| JOSEPH LARSON, individually and as Personal Representative of the Estate of Eric Joseph Larson, Deceased, and on behalf of TERESA LARSON, CALEB LARSON, RACHEL LARSON, BROOKE LARSON, and BEAU LARSON,<br><br>     Plaintiffs,<br><br>     -vs-<br><br>FEDEX GROUND PACKAGE SYSTEM, INC., GNB TRUCKING COMPANY, EVGENYA MURADOVA, and KEVIN LAMONT McGHEE,<br><br>     Defendants. | **CV**<br><br><br>**DEFENDANTS'<br>NOTICE OF REMOVAL** |

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants FedEx Ground

Package System, Inc., GNB Trucking Company, Evgenya Muradova and Kevin

Lamont McGhee file this Notice of Removal of this case from the Montana Fourth

Judicial District Court, Mineral County. Removal is based on both 28 U.S.C. §§ 1332(a) diversity of citizenship and 1331 federal question jurisdiction. Defendants are removing this case within thirty-days of Plaintiff dismissing the State of Montana from this case.

Though this Notice is being filed more than one-year after the case commenced against these Defendants, it is timely. As demonstrated below, Plaintiff included the State of Montana to defeat diversity jurisdiction. Plaintiff did not prosecute the claims against the State in any way and settled under a non-monetary agreement that lacks consideration. Moreover, given implications of the claims asserted against these Defendants and the State, along with the Eleventh Amendment, removal is independently appropriate, and timely, with federal question jurisdiction.

## Summary of the Grounds for Subject Matter Jurisdiction and Removal

With respect to section 1332(a) diversity jurisdiction, there is complete diversity and the amount in controversy requirement is met. This Notice of Removal is being filed more than one year after service of these Defendants, but it is still timely under 28 U.S.C. § 1446(c)(1). Congress passed this statutory exception to the one-year mark for cases just like this. With the one-year rule, "Congress may have intended to limit diversity jurisdiction, but it did not intend to allow plaintiffs to circumvent it altogether." *Tedford v. Warner-Lambert Co.*, 327

F.3d 423, 427 (5th Cir. 2003)[1]. Any other "application of the one-year limit would encourage plaintiffs to join non-diverse defendants for 366 days simply to avoid federal court, thereby undermining the very purpose of diversity jurisdiction." *Id.* That is precisely the case here.

With respect to section 1331 federal question jurisdiction, Plaintiff has made clear since filing the state court Complaint that some of his claims (including claims for establishing liability and seeking punitive damages) must necessarily turn on substantial questions of federal law—particularly, the Federal Motor Carrier Safety Regulations. Plaintiff has also heavily relied on federal regulations to request documents in discovery. Pursuant to 28 U.S.C. § 1446(b), Defendants are timely removing this case because the State of Montana was dismissed from the state court case less than 30 days ago. Since the Eleventh Amendment previously precluded removal of some claims against both these Defendants and the State, the case only became removable with respect to federal question jurisdiction within the last 30 days. Since the one-year limit of 28 U.S.C. 1446(c) expressly limits itself to "jurisdiction conferred by section 1332," it does not apply to federal question removal under section 1331. As well, the Court has

---

[1] This 2003 Court of Appeals decision demonstrates the equitable considerations of allowing post one-year diversity removal even before Congress passed the statutory exception in 2011.

supplemental jurisdiction over any state law claims. 28 U.S.C. § 1367.

## I.   THE STATE COURT ACTION AND PLEADINGS

### A.   The Complaint

1.      Plaintiffs filed suit in state court on April 1, 2015. The underlying case stems from an unfortunate and fatal accident involving black ice in Mineral County on December 27, 2013.

2.      That evening, a driver not part of this litigation was operating a tractor-trailer combination and lost control while traveling eastbound on Interstate 90. Pl.'s Compl. at ¶ 4. Eric Larson was also traveling on Interstate 90 in a Chevrolet Silverado, behind that first tractor-trailer combination. *Id.* According to law enforcement's report, Larson, "slid off" the road near the same spot. Plaintiff alleges, however, that Larson "parked his vehicle." *Id.* at ¶ 10. Defendant McGhee, operating a tractor trailer, was third in this line of vehicles to encounter the black ice. The investigating report determined McGhee also "slid off the roadway" in the same area as the previous two vehicles, struck Larson's vehicle, struck the trailer of the first driver and then struck Larson and the first driver. The accident, unfortunately, was fatal for both Larson and the first driver.

3.      Plaintiff, Joseph Larson, individually and as Personal Representative of the Estate of Eric Joseph Larson, filed suit after the accident. Plaintiff sued Defendant McGhee. Plaintiff also sued these other named Defendants on the basis

that they are liable for McGhee's alleged actions and/or omissions. Against these named Defendants, Plaintiff's theories include negligence, negligence per se, negligent hiring and retention, negligent failure to train and supervise, wrongful death, survival, and punitive damages.

4.      Plaintiff also named the State of Montana in the state court Complaint. Plaintiff never prosecuted any of these claims, however, and only served the State after the district court insisted the case move forward. Plaintiff's theories against the State included negligence, negligence per se, negligent failure to train or supervise, negligence / premises liability, wrongful death and survival.

5.      Plaintiff also alleges Montana's punitive damages cap is unconstitutional.

B.      Service of the Complaint and These Defendants Answer

6.      Plaintiffs served FedEx with the state court Complaint five days after filing the state court Complaint, on April 6, 2015.

7.      Defendants GNB and Muradova were served eleven days after filing the state court Complaint, on April 12, 2015.

8.      Defendants FedEx, GNB, and Muradova answered the state court Complaint on April 27, 2015.

9.      Also on April 27, 2015, Plaintiff went through the Secretary of State to serve Defendant McGhee.

**10.**     Defendant McGhee answered on June 12, 2015.

**11.**     The State of Montana was not served at the time these Defendants were served. Nor was the State of Montana served by the time these Defendants answered.

      **C.**   <u>Plaintiff Prosecutes His Case Against These Defendants Throughout Most of 2015 Without Even Serving the State of Montana</u>

**12.**     On the same day the state court Complaint was filed, April 1, 2015 (which was before Defendant FedEx was served), Plaintiff, through counsel, delivered to Defendant FedEx's counsel Plaintiff's First Discovery Requests. The 38 pages of requests included: 46 requests for production; 28 interrogatories; and 4 requests for admission.

**13.**     Plaintiff later provided Defendant GNB with discovery requests dated April 7, 2015 (dated 20 days before GNB was served with the state court Complaint). The 36 pages of requests included 47 requests for production and 25 interrogatories.

**14.**     On April 30, 2015, Plaintiff served a second set of discovery on Defendant FedEx. As to Defendant FedEx, this brought the total served enumerated interrogatories to 38 and requests for production to 47.

**15.**     These discovery requests have numerous subparts.

**16.**     Defendant FedEx provided discovery answers in May and June of

2015.

17.     Plaintiff also responded to Defendant FedEx's discovery in the same timeframe. The parties subsequently exchanged correspondence regarding discovery.

18.     On June 18, 2015, Plaintiff's counsel requested to take 10 separate depositions from individuals from these Defendants. The State of Montana had not yet appeared. None of the requested depositions pertained to the State.

19.     On June 26, 2015, Plaintiff's counsel requested information regarding Rule 30(b)(6) corporate deponents to "get this process going." Plaintiff's counsel represented he would "be communicating with the State." However, the State did not appear.

20.     During the summer and fall of 2015, the parties exchanged correspondence regarding discovery and protective orders. Plaintiff still did not serve Defendant State of Montana.

21.     On August 31, 2015, Plaintiff served Defendant McGhee with discovery. The requests included 31 requests for production and 32 interrogatories.

22.     Throughout the remainder of 2015, Plaintiff and these Defendants continued to exchange discovery and letters regarding discovery. The State of Montana, having still not appeared, was not part of any of the discovery or correspondence.

**23.** After exchanging correspondence, the parties agreed on a protective order regarding discovery in December 2015. The State not having appeared, Defendant FedEx was unaware of whether the State was taking part in that discussion.

D. The State Court Orders Plaintiff Serve or Dismiss the State of Montana, and the State Answers in March of 2016

**24.** On September 14, 2015, the parties attended a hearing with the state court to address discovery and a protective order. Plaintiff's counsel advised all state court defendants had been served, "except the State of Montana."

**25.** The state court then enforced a deadline against Plaintiff, of December 4, 2015, to serve the State of Montana.

**26.** After the state court set a deadline for Plaintiff to proceed against the State, the State of Montana finally accepted service, on December 10, 2015.

**27.** Plaintiff did not require the State of Montana to file an Answer in 2015.

**28.** Assuming the State's Answer was imminent, on January 20, 2016, in response to Plaintiffs' request, Defendants offered deposition dates for several defendants and key witnesses. Defendants also notified counsel for the State to see if the dates could work for the State. Defendants did not hear a response from the State and Plaintiff did not notice the depositions. Defendants did not want to proceed with depositions because the State had not yet answered.

29.     On March 8, 2016, nearly one-year after Defendant FedEx had been served, the State of Montana finally answered, more than three months after it was "effective[ly]" served. Plaintiff made no attempt to secure default judgment against the State although it had been served three months earlier.

30.     A week before the State answered, Plaintiff's counsel wrote the State's counsel to inform him that he "really need[s] the State to answer the complaint" because "FedEx [was] using the State's status as an impediment for [him] to get discovery[.]"

E.     Plaintiff Does Not Prosecute His Claim Against the State of Montana and then Releases the State for No Monetary Compensation

31.     During 2016, Plaintiff continued seeking extensive discovery from these Defendants.

32.     Plaintiff served absolutely no discovery on the State of Montana.

33.     Instead, Plaintiff dismissed the State of Montana with prejudice in July 2016, and received no monetary compensation in settlement.

34.     Prior to dismissal, Plaintiff never served any discovery or prosecuted a monetary claim against the State of Montana.

35.     These Defendants recently learned that Plaintiff dismissed the State without payment, based only on a non-monetary agreement that was outside of the claims plead in the Complaint.

36.    The Release[2] given by Plaintiff to the State of Montana lacks consideration.

37.    In fact, the Release does not obligate the State of Montana to do anything. It, in essence, lacks any *quid pro quo*.

38.    Plaintiff and the State of Montana also entered into a separate agreement[3] that relates to a portion of the Interstate encompassing the accident scene. That agreement pertains to what the parties thought were safety measures for the general public. Though Plaintiff and the State blame these Defendants for the accident, that agreement does not obligate the State to actually do anything without additional funding from third-party sources.

39.    Also, Plaintiff did not plead any relief in the state court Complaint to benefit the public. This is likely because such a claim would fail to state a claim upon which relief could be granted under the public duty doctrine:

> The public duty doctrine provides that a governmental entity cannot be held liable for an individual plaintiff's injury resulting from a governmental officer's breach of a duty owed to the general public rather than to the individual plaintiff. The rationale underlying this doctrine is that a duty owed to all is a duty owed to none.

*Nelson v. State*, 195 P.3d 293, 300 (Mont. 2008) (internal citations and quotations

---

[2] These Defendants will be seeking leave to file the settlement agreement under seal. Defendants disagree with Plaintiff's attempt to mark the agreement confidential since the State is a party.
[3] These Defendants also disagree this separate agreement should be marked confidential. But since Plaintiff designated it confidential, Defendants will seek leave to file it under seal.

omitted). Here, the separate agreement between Plaintiff and the State provides it is for safety measures for all the public.

40.    The separate agreement also does not require the State of Montana do anything, but conditions itself on the State receiving additional funding to provide a safety benefit for the public at large concerning the area where this accident occurred.

41.    On July 14, 2016, the state court dismissed with prejudice the State of Montana from the case after receiving a stipulation that was signed by Plaintiff's counsel and counsel for the State.

42.    Before dismissing the State, Plaintiff never served the State with any discovery requests. Rather, Plaintiff engaged in informal discussions with the State, which Plaintiff kept hidden from these Defendants.

43.    Based on information and belief, before dismissing the State, Plaintiff never requested depositions from the State. By contrast, Plaintiff had asked for over 10 depositions from these Defendants 10 months before the State even answered.

44.    Within a month of the State's dismissal, these Defendants remove.

## II.    DIVERSITY JURISDICTION

45.    The Court also has diversity jurisdiction under section 1332(a).

### A.    Complete Diversity Exists

46.     Under section 1332(c)(2), the legal representative of a decedent is a citizen of the state of the decedent. Upon information and belief, Eric Larson was a citizen of the state of Montana. Therefore, the Estate of Eric Larson is a citizen of the state of Montana.

47.     Upon information and belief, the remaining individuals listed as Plaintiffs are natural persons and citizens of the States of Idaho and Montana.

48.     Defendant FedEx Ground Package System, Inc. is incorporated under the laws of the State of Delaware, with its principal place of business in the State of Pennsylvania. For diversity purposes, FedEx is a citizen of Delaware and Pennsylvania.

49.     Defendant GNB Trucking Company is incorporated under the laws of the State of Utah, with its principal place of business in the State of Utah. For diversity purposes, GNB is a citizen of the State of Utah.

50.     Defendant Evgenya Muradova is a natural person and a citizen of the State of Utah. For diversity purposes, she is a citizen of the State of Utah.

51.     Defendant Kevin Lamont McGhee is a natural person and a citizen of the State of Utah. For diversity purposes, he is a citizen of the State of Utah.

52.     There is complete diversity between the parties.

B.     The Amount in Controversy Requirement

53.     The amount in controversy in this action exceeds $75,000.00,

exclusive of interest and costs. Plaintiff's counsel previously claimed the value of this case exceeds $75,000.00, and Plaintiff has demanded in excess of that amount to resolve the dispute.

### C.   The Exception in Section 1446(c)(1) Applies

**54.**   Though Defendants are filing this Notice more than one year after service, it is still timely.

**55.**   With the one-year limit, "Congress did not intend plaintiffs, through gimmicks and artful maneuvering used in connection with the one year bar to removal, to straightjacket or deprive nonresident defendants of their legitimate entitlements to removal." *Saunders v. Wire Rope Corp.*, 777 F. Supp. 1281, 1284 (E.D. Va. 1991).

**56.**   These non-resident Defendants have a legitimate entitlement to removal.

**57.**   Section 1446(c)(1) provides a notice of removal may be filed more than one year after commencement of the action "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446.

**58.**   "The bad faith exception, as distinct from the doctrine of fraudulent joinder, applies to 'plaintiffs who joined—and then, after one year, dismissed— defendants whom they *could* keep in the suit, but that they did not want to keep in

the suit, except as removal spoilers.'" *Heller v. Am. States Ins. Co.*, CV159771DMGJPRX, 2016 WL 1170891, at *2 (C.D. Cal. Mar. 25, 2016) (quoting *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1266 (D.N.M. 2014)) (emphasis in original).

59.     Because Plaintiff voluntarily dismissed the State, these Defendants do not need to show fraudulent joinder. Instead, the case is governed under the voluntary-involuntary rule. *Self v. Gen. Motors Corp.*, 588 F.2d 655, 658 (9th Cir. 1978); *Great N. Ry. Co. v. Alexander*, 246 U.S. 276, 279 (1918). "'As a general rule, a dismissal ordered by the court is considered to be involuntary while one entered at the request of a party is voluntary.'" *Heller*, 2016 WL 1170891, at *1 (citation omitted). Removal is appropriate here under the voluntary-involuntary rule.

60.     As demonstrated above, Plaintiff never prosecuted his claims against the State.

61.     Instead of prosecuting the claims in his state court Complaint against the State, Plaintiff waited for the time for federal court removal to expire and then voluntarily dismissed the State with no compensation. "The precedent in this area distinguishes between a plaintiff who voluntarily terminates his State court action against all non-diverse parties, and those situations where the plaintiff has no

control over the dismissal." *Kite v. Richard Wolf Med. Instruments Corp.*, 761 F. Supp. 597, 600 (S.D. Ind. 1989).

62.     Plaintiff actively delayed serving the State, until the very last date allowed by the state court.

63.     Plaintiff served no discovery nor took depositions of the State.

64.     The State did not file an Answer until nearly one year after the FedEx Defendants were served, and Plaintiff made no attempt to secure default judgment.

65.     As demonstrated by the settlement agreement and feasibility agreement, the State is not obligated to contribute any monetary amount.

66.     As demonstrated by the settlement agreement and feasibility agreement, the relief actually sought against the State fails to state a claim upon which relief can be granted pursuant to the public duty doctrine.

67.     Plaintiff manipulated the State as a temporary party to avoid federal jurisdiction.

68.     The interests of justice are promoted by applying the exception to the one-year rule.

## III.     FEDERAL QUESTION JURISDICTION

### A.     The Court Has Jurisdiction under Sections 1331 and 1367

69.     The Court has federal subject matter jurisdiction, because some of Plaintiff's claims arise out of federal law. "The district courts shall have original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

70. While generally, federal question jurisdiction is determined by looking at the face of the complaint, a plaintiff cannot avoid federal jurisdiction by artfully pleading the complaint. *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 860–61 (9th Cir. 1987) (collecting cases). Thus, there can be federal question jurisdiction even if not shown on the face of the complaint.

71. During discovery, these Defendants specifically asked Plaintiff if he was relying on federal statutes for establishing liability.

72. Plaintiff responded: "Defendants violated the Federal Motor Carrier Safety Administration Regulations[.]" Plaintiff then provided a non-exhaustive list of those contentions.

73. Federal law does not only affect Plaintiff's basis for establishing liability, Plaintiff relies in part on this same federal law to seek punitive damages.

74. Besides affecting both liability and damages, Plaintiff also relies on federal law to seek discovery. For example, he has requested "[a]ll documents required to be maintained by the FMCSA."

75. The Federal government has a clear interest in regulating interstate commerce and entities to which the Federal Motor Carrier Safety Administration Regulations apply.

**76.** Because Plaintiff relies on federal law for establishing liability, seeking punitive damages, and also for the type of discovery Plaintiff requests, the claims arise under the laws of the United States. Illustratively, in one federal case, the plaintiff alleged: "This case also involves questions of violations of the Federal Motor Carrier Safety Regulations." *Tinsley v. Barney*, 14-0100-DRH, 2014 WL 1778418, at *2 (S.D. Ill. May 5, 2014). The court held: "The case involves safety issues in transportation and the application of the Federal Motor Carrier Safety Regulations to the parties' conduct surrounding the accident. The Court has federal question jurisdiction over this matter." *Id.*

**77.** To the extent any claims are only state claims, the Court has supplemental jurisdiction over them. 28 U.S.C. § 1367.

B.   <u>Removal Is Timely under Section 1446(b)(3)</u>

**78.** Removal is timely. Under section 1446(b)(3), "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

**79.** The one-year limitation of section 1446(c) does not apply to federal question jurisdiction, because it is limited only to diversity jurisdiction conferred by section 1332.

80.     These Defendants are filing this Notice of Removal within 30 days of receiving the order in which they first ascertained the case was removable—the order dismissing the State of Montana dated July 14, 2016.

81.     Prior to that order, these Defendants were unable to remove this case as some claims against them were also asserted against the State. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Though not expressly written, the Eleventh Amendment also applies to suits against a state by its own citizens. *See, e.g., Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72 (2000).

82.     "The circuits are split on whether the Eleventh Amendment is a jurisdictional bar." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1045 (6th Cir. 2015).

83.     However, the Eleventh Amendment is a jurisdictional defense available to the states. *Bd. of Trustees of U. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."). A state can waive this guarantee or consent to federal jurisdiction. *See, e.g., Lapides v. Bd. of Regents of U. System of Georgia*, 535 U.S. 613, 618 (2002) ("A State

remains free to waive its Eleventh Amendment immunity from suit in a federal court.").

84.    Though the Eleventh Amendment does not apply to entire cases, it applies to claims. *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 392 (1998).

85.    The State of Montana has not waived its right of immunity from suit in federal court. *See State of Montana v. Gilham*, 133 F.3d 1133, 1139 (9th Cir. 1998) ("the State has not waived its immunity from suit in federal court."). It also never told these Defendants it consented to federal jurisdiction in this case.

86.    Here, some claims were asserted against both the State and these Defendants—Count IX, Count X, and Count XII. Because some of the claims against these Defendants were also asserted against the State of Montana, these Defendants did not ascertain that the case became removable until July 14, 2016, when the State was dismissed with prejudice. As this Notice is being filed within thirty days of that order dismissing the State with prejudice, the Notice is timely.

## IV.    REMOVAL IS APPROPRIATE

87.    Based on federal question jurisdiction, diversity of citizenship, and the amount in controversy, this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1332. Removal is proper pursuant to 28 U.S.C. § 1441(a), and, pursuant to §§ 106 and 1446(a), and Local Rule 1.2(c)(5), it is to the district court of the United States

for the district and division embracing the place of the state action, which was commenced in the Montana Fourth Judicial District Court. Defendants are filing its Notice of Removal in the Fourth Judicial District Court pursuant to section 1446(d). A copy is attached as **Exhibit C**.

88.    Pursuant to section 1446(a), "a copy of all process, pleadings, and orders served upon such defendant or defendants in such action" is attached as **Exhibits A** and **B.**

DATED this <u>11th</u> day of <u>August,</u> 2016.

                              /s/ Nicholas J. Pagnotta
                    Mark S. Williams, Esq.
                    Nicholas J. Pagnotta, Esq.
                    *Attorneys for Defendants*