IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

FILED
NOV 08 2016
Clerk, U.S Courts
District Of Montana
Missoula Division

| | |
|---|---|
| JOSEPH LARSON, individually and as Personal Representative of the Estate of Eric Larson, Deceased, and on behalf of TERESA LARSON, CALEB LARSON, RACHEL LARSON, BROOKE LARSON, and BEAU LARSON,<br><br>Plaintiffs,<br><br>vs.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC., GNB TRUCKING COMPANY, EVGENYA MURADOVA, and KEVIN LAMONT MCGHEE,<br><br>Defendants. | CV 16–105–M–DWM<br><br>ORDER and OPINION |

On December 27, 2013, Eric Larson was traveling home to Missoula, Montana on Interstate 90 after visiting his parents in Coeur D'Alene, Idaho. Just before 10 p.m., a couple driving a tractor-trailer eastbound on I-90 near Lookout Pass encountered black ice and slid off the road into the median. Shortly after, Eric, driving a Chevrolet truck, left the roadway at the same spot.[1] With his truck

---

[1] The parties appear to dispute whether Eric first slid off the road and then parked to render aid or whether he simply parked to render aid in the first instance.

1

on the shoulder, Eric activated his emergency lights and exited his vehicle to render aid. Subsequently, Defendant Kevin McGhee, who was driving a tractor-trailer hauling double trailers for FedEx Ground, encountered the black ice and slid off the roadway at the same location, entering the median and striking Eric. Eric survived the impact but died from his injuries.

Eric's family ("the Larsons") filed suit in state court against the owners/operators of the truck (FedEx, GnB Trucking Company, and Evgenya Muradova), the driver of the truck (Kevin McGhee), and the State of Montana, raising twelve causes of action related to the accident. (Doc. 1-1.) All the defendants except the State were served with the Complaint in April 2015 and with initial discovery requests by September 2015. The State was served on December 4, 2015. (Doc. 2-16.) The State did not answer until March 8, 2016, and was never served with discovery requests. (*See* Doc. 1 at ¶¶ 29, 63.) On July 13, 2016, the Larsons and the State executed a settlement agreement, (Doc. 9-1, Ex. D), and on July 14, the State was dismissed with prejudice, (Doc. 7). On August 11, 2016, the remaining defendants ("the Defendants") removed the action. The Larsons now seek to remand this action to state court. (Doc. 8.) That request is granted.

## LEGAL STANDARD

A defendant may remove a case to federal court only if the case was one that

could have been filed in federal court. *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citing 28 U.S.C. § 1441(b)). Questions of removal jurisdiction are "determined by reference to the 'well-pleaded complaint.'" *Id.* "The removal statute is strictly construed against removal jurisdiction," and "[t]he defendant bears the burden of establishing that removal is proper." *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009). This is a heavy burden as federal courts must "scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941) (internal quotation marks omitted).

## ANALYSIS

The Defendants' removal is based on both 28 U.S.C. § 1332(a) diversity of citizenship and § 1331 federal question jurisdiction. Neither statute confers jurisdiction in this context.

### I. Diversity

It is uncontested that there is now complete diversity and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; Notice of Removal, Doc. 1 at ¶¶ 45-53. But, this case turns on whether removal was timely. Pursuant to 28 U.S.C. § 1446(c)(1), a case may not be removed on the basis of diversity of citizenship "more than 1 year after the commencement of the action, unless the district court

3

finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." While the Ninth Circuit has yet to decide what standard governs this bad faith requirement, *see Escalante v. Burlington Nat'l Indem., Ltd.*, 2014 WL 6670002, at *3 (C.D. Cal. Nov. 24, 2014), it has previously held that the requirement of bad faith, in the context of awarding sanctions, carries with it a high threshold and entails actions tantamount to recklessly raising a frivolous argument or disrupting or hindering court proceedings, *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997). District courts have focused on "the plaintiffs' 'subjective intent' in naming a non-diverse defendant" and "applied a strict standard[, finding] bad faith when a plaintiff failed to actively litigate a claim against a defendant *in any capacity*." *Heacock v. Rolling Frito-Lay Sales, LP*, 2016 WL 4009849, at **2-3 (W.D. Wash. July 27, 2016) (collecting cases) (emphasis in original). Also relevant to the bad faith inquiry are "the timing of naming the non-diverse defendant, the timing of dismissal, and the explanation given for that dismissal." *Id.* at *3. The plaintiff's desire to stay in state court must be the but-for cause of its decision to keep a non-diverse defendant in the case past the one-year deadline for removal. *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1273 (D.N.M. 2014).

    Here, the Larsons did not join the State in bad faith solely to prevent

4

removal. As noted by the Defendants, the State was not served until December 2015, 8 months after the Complaint was filed, (*see* Doc. 2-16), and only after a service deadline was set by the state court, (*see* Doc. 1 at ¶ 26). Further, no discovery was served upon the State, (*id.* at ¶ 63), the State did not answer until three months after service, (*id.* at ¶ 29), and the State was not dismissed by mutual agreement of the parties until July 2016, 15 months after the Complaint was filed, (Doc. 7). Considered alone, the delay described above could indicate the Larsons failed to actively litigate against the State. However, the Larsons' dealings with the State were much more involved.

From February 27, 2015, to July 13, 2016, the Larsons were actively engaged in discussions with the State regarding their desired remedy of establishing variable speed limit signs in the I-90 corridor through Lookout Pass. (*See* Paoli Aff., Doc. 9-1 at ¶ 10; Jasper Aff., Doc. 9-2 at ¶ 16; Ohler Aff., Doc. 9-3 at ¶ 3.) It was not until May 29, 2016, that the State and the Larsons entered into an agreement regarding the feasibility of the variable speed limits, (Paoli. Aff., Doc. 9-1 at Ex. E), and June 29, 2016, that the final "Feasibility Assessment" was completed, (*id.* at Ex. C; Ohler Aff., Doc. 9-3 at ¶ 5). This was not, as the Defendants argue, a nod and a handshake deal with illusory obligations on the part of the State. (*See* Ohler Aff., Doc. 9-3 at ¶¶ 5, 10 (indicating that the Montana

Department of Transportation "devoted substantial time and resources" to the completion of the Study, including "thousands of dollars and hundreds of hours").) The Larsons actively pursued their case with the State, consistently seeking the same remedy. *Compare Heacock*, at *5, *with Heller v. Am. Sts. Ins. Co.*, 2016 WL 1170891, at *3 (C.D. Cal. Mar. 25, 2016) (finding bad faith where the plaintiff "provided inconsistent explanations as to why [the non-diverse defendant] was not dismissed earlier in the proceedings"). The fact that the Larsons merely sought the completion of a study, as opposed to the implementation of a variable speed limit, does not taint that dismissal; nor does the fact the Larsons sought a nonmonetary remedy. *See Heacock*, at *5 (finding no bad faith even when the non-diverse defendant was dismissed for no material benefit to the plaintiff). The Defendants fail to show bad faith that would obviate the one-year removal deadline.

## II. Federal Question

The Defendants' removal was also based on the existence of federal question jurisdiction under 28 U.S.C. § 1331. In determining whether such jurisdiction exists, courts look to the allegations in the plaintiff's well-pleaded complaint to determine whether an action "arises under" federal law or the Constitution. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983). If federal law does not create the plaintiff's claim, the Supreme

Court recognizes that in certain cases, federal question jurisdiction will lie over state-law claims that implicate significant federal issues or "turn on substantial questions of federal law." *Grable & Sons Metal Products, Inc. v. Daru Engg. & Mfg.*, 545 U.S. 308, 312 (2005). This is a "slim category" of cases, *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006), and "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction," *Merrell Dow Pharms., Inc.*, 478 U.S. at 813.

While there is not a "single, precise, all-embracing" test for jurisdiction over federal issues embedded in state law claims, the inquiry is whether any of the plaintiff's claims necessarily depend on the resolution of a substantial question of federal law. *Grable*, 545 U.S. at 314. A federal issue is "necessary" if the plaintiff's claim depends on the resolution of that issue. *Id.* at 314-15. "The crux of the matter is whether the prima facie elements of [the p]laintiff's claims necessarily raise the federal issue or whether the federal issue is merely raised by the potential for certain evidence utilized to prove the elements." *McGrath ex rel. Mont. v. Janssen, LP*, 2009 WL 9136812, at *3 (D. Mont. Nov. 30, 2009) (Lovell, J.). This case falls into the latter category.

Here, the purported basis for federal question jurisdiction is the Federal Motor Carrier Safety Act and its affiliated regulations. The sorts of claims

7

brought in this case are not the kind of claims that benefit from a federal forum as would say a federal tax claim. *See Grable*, 545 U.S. at 315. While the Larsons' state law claims may raise evidentiary issues requiring interpretation of a federal statute or regulations, the Larsons could establish, without the resolution of an issue of federal law, the essential elements of their state law claims. *See Burgess v. J.H.O.C. Premier Transp., Inc.*, 2012 WL 4762126, at \*\*5-6 (D.S.C. Sept. 24, 2012) *report adopted in pertinent part Burgess v. J.H.O.C. Transp., Inc.*, 2012 WL 4762140 (D.S.C. Oct. 5, 2012) (holding that a plaintiff's complaint, which cited the Federal Motor Carrier Safety Act, did not confer federal jurisdiction because the plaintiff did not need to establish a violation of the Federal Act or its regulations to establish liability under her state law negligence claims).

The Larsons' complaint does not reference the Federal Motor Carrier Safety Act. *Compare* Doc. 1-1 *with Tinsley v. Barney*, 2014 WL 1778418, at \*2 (S.D. Ill. May 5, 2014) (wherein complaint states "[t]his case also involves questions of violations of the Federal Motor Carrier Safety Regulations"). Rather, the Larsons cite two Montana motor vehicle statutes in their cause of action for negligence per se (Count II), (Doc. 1-1 at ¶ 22), the violations of which turn solely on state law. *See Craig v. Schell*, 975 P.2d 820, 825-26 (Mont. 1999) (holding that "it is only under extremely limited circumstances that the violation of a motor vehicle statute

8

will not constitute negligence as a matter of law"). The Larsons' complaint alleges three other actions for negligence (Counts I, III, IV), all of which can be determined solely on state law grounds. *Id.* at 826 (noting that hazards such as black ice "can be avoided when drivers proceed in a careful and prudent manner" and that "if one drives too fast for the conditions . . . such hazards may result in serious accidents); *Maguire v. State*, 835 P.2d 755, 758 (Mont. 1992) ("A party may be held [directly] liable for the damages caused by another . . . on the theory of negligent hiring and/or supervision."). The same is true of the Larsons' claims for wrongful death, survival, and punitive damages (Counts IX, X, XI). *See* Mont. Code Ann. §§ 27-1-513, 27-1-501, 27-1-220. The Larsons' "right to relief [does not] necessarily depend[] on resolution of a substantial question of federal law[,]" and "federal law is [not] a necessary element of one of [the Larsons'] well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988) (internal quotation marks, alterations, and citations omitted).[2] The Defendants

---

[2] The Defendants do not rely on the Larsons' final cause of action (Count XII), which seeks a declaration that Montana's punitive damages cap is unconstitutional, to argue for federal question jurisdiction. Nor does this cause of action necessarily confer such jurisdiction as punitive damages have historically been left to the states. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996) ("In our federal system, States necessarily have considerable flexibility in determining the level of punitive damages that they will allow in different classes of cases and in any particular case."). "[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313.

9

have not shown removal is proper pursuant to § 1331.

## III. Attorneys' Fees

The Larsons seek attorneys' fees and costs on the present motion. Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The award of fees and costs is discretionary and may occur "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Conversely, when an objectively reasonable basis exists, fees should be denied. *Id.* As discussed above, the Ninth Circuit has not articulated a standard for bad faith under § 1446(c)(1), which was added to the statute in 2011. *See* H.R. Rep. No. 112-10, at 15 (2011). As a result, both parties rely on district court decisions and the Defendants' position was not previously determined or "otherwise clearly foreclosed." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1066-67 (9th Cir. 2008). Similarly, both parties turn to district court decisions in their discussion of federal question jurisdiction. In light of the unsettled law, the legal basis for the Defendants' removal was objectively reasonable. The events leading to removal were also such that one could view the Larsons' actions vis-a-vis the State in the state court as misleading. (*See* Defs.' Resp., Doc. 10 at 12-13 (arguing the

Defendants were kept in the dark about the Larsons' dealings with the State until late July 2016); *id.* at 13 (stating that the Larsons have yet to produce correspondence and materials exchanged with State from December 30, 2014 to October 23, 2015).) The Larsons' request for attorneys' fees and costs is denied.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that the Larsons' motion (Doc. 8) is GRANTED-IN-PART and DENIED-IN-PART. This matter is REMANDED back to the Montana Fourth Judicial District Court, Mineral County, Montana. The Clerk of Court is directed to deliver the case file back to the state court and close the Federal case. The Larsons' request for fees and costs is DENIED.

Dated this 8th day of November, 2016.

Donald W. Molloy, District Judge
United States District Court